UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLENDA K. ASHFORD                    CIVIL ACTION

VERSUS                               NO.  04-2214

FRANCES J. HARVEY, SECRETARY,        SECTION "R" (4)
DEPARTMENT OF THE ARMY

## ORDER AND REASONS

Plaintiff Glenda Ashford, appearing pro se, asks the Court to award partial summary judgment on the issue of liability and also asks that the Declaration of Cheryl Weber, submitted as Government Exhibit A, be ruled inadmissible.  Defendant Francis Harvey asks that plaintiff's claims be dismissed in accordance with Rule 56 of the Federal Rules of Civil Procedure.  For the following reasons, the Court GRANTS defendant's motion and DENIES plaintiff's motion.

## I.    BACKGROUND

Plaintiff Glenda Ashford, an African-American woman, currently works in Atlanta for the Department of the Army as a

Civil/Environmental Program Manager, a GS level 13 position that she has held for 13 years.  (Pl.'s Commencement of Civil Action at 3).  In mid-1999, the New Orleans District Office of Mississippi Valley Division of the U.S. Army Corps of Engineers advertised its plan to hire for a GS level 14 position, Chief of the Environmental Planning and Compliance Branch of the New Orleans District (*Id.* at 4).

The Corps used two separate vacancy announcements.  The first announced the vacancy to applicants from within the Corps.  The second announced the vacancy to all civilians.  (Def.'s Mot. for Summ. J. at Exs. A-1, A-2).  The announcements described the application process and set out the "qualification requirements" for the position.  Both announcements stated that candidates would be rated by a selection panel based on the degree to which they satisfied certain criteria specified in the announcement (*Id.*).  These criteria were:

1.   Ability to lead a multi-disciplinary environmental staff.
2.   Knowledge of laws, policies, planning procedures, quality control procedures, and project management principles pertaining to water resources development projects.
3.   Knowledge of the principles [of] general ecology, conservation biology, and applied fish and wildlife and wetlands habitat management, restoration, and preservation.
4.   Ability to communicate orally.
5.   Ability to communicate in writing.
6.   Ability to develop environmental and cultural resources

2

> standards, procedures, and instructions for the
> planning and project management of water resources
> development projects.

(*Id.*).  The panel was to select an applicant or applicants
for referral to Major General Phillip R. Anderson, then the
Division Commander of the Mississippi Valley Division of the
Corps and the "selecting official" for this process, who would
make the ultimate hiring decision.  (*Id.* at Ex. A).

Fourteen written applications that survived an initial
screening process were referred to the panel, which consisted of
Colonel Thomas Julich, the District Commander of the New Orleans
District of the Corps, Steve Cobb, the Chief of the Environmental
Analysis Division at the Mississippi Valley Division Office, and
Bob Schroeder, the Chief of the Operations Division for the New
Orleans District.  (*Id.*).  The panel rejected four applicants
after an initial screening, leaving ten applicants, including
Ashford.  (*Id.*).  The ten remaining applicants sat for interviews
with the Gallup Interview Center, a private professional
organization hired to assess the candidates' leadership skills.
(*Id.*).  Gallup scored each candidate on their direction, drive to
execute, relationship skills, and management abilities and
reported their findings about each candidate to the panel during
a telephone conference.  (*Id.* at Exs. A, B-2 at 58).  The panel
interviewed candidates directly, asking each candidate the same

3

pre-scripted questions.  (*Id*. at Ex. A).  The members of the panel then individually ranked the applicants from one to ten based on the interviews, the Gallup findings, input from the candidates' supervisors and the candidates' applications.  (*Id*. at Exs. A, B-2 at 60-61).  Ashford tied with another candidate as the third highest-rated candidate overall.  (*Id*. at Ex. A-3). The panel then eliminated the four lowest-ranked candidates and re-ranked the remaining six.   (*Id*.).  Ashford was ranked fourth out of the final six, placing her ahead of five white male applicants who had reached the final ten.  (*Id*.).

The panel recommended that the Corps hire David Carney, a white man.  (*Id*.).  In both rounds of ranking, each of the panelists listed Carney as his first choice.  (*Id*.; Pl.'s Commencement of Civil Action at 4).  On November 22, 1999, General Anderson selected Carney for the position.  (Def.'s Mot. for Summ. J. at Exs. A-8, B-1).

At the time Carney was hired, the Corps had a policy of writing a justification for not selecting minority applicants (including women) for positions rated GS level 13 and above. (*Id*. at Ex. A).  The panel wrote such a justification for Ashford and another woman, Rebecca O'Dell.  (*Id*. at Ex. A-5).  The panel justified its decision not to select Ashford as follows:

**Ms. Glenda K. Ashford -** The panel did not rate Ms.

Ashford as highly as other candidates because of her
limited experience and technical knowledge of the
various fields of ecology, cultural resources, and
water resources planning applicable to water resources
projects found in the New Orleans District and the type
of work performed in the district.  Also, she lacked
experience as a supervisor.

(*Id.*).

Ashford filed a claim with the New Orleans District Office
of the Equal Employment Opportunity Commission ("EEOC").  The
EEOC held a fact-finding conference on October 23 and 24, 2000,
at which eight witnesses gave testimony, including the plaintiff
and all three members of the selection panel.  (*Id.* at Ex. B-4).
On July 16-17 and August 16, 2002, the EEOC held a hearing before
an administrative judge, at which Ashford, Schroeder, Cobb, and
others testified.  (*Id.* at Exs. B-5, B-6, B-7, B-8, B-9).  The
EEOC denied relief and gave Ashford a right to sue letter.
Having exhausted her administrative remedies, Ashford filed suit
in this Court, alleging that the Corps "engaged in unlawful
employment practices with the intent and result of denying
Plaintiff employment." (Pl.'s Commencement of Civil Action at 2).
Ashford alleges that the Corps denied her an employment
opportunity on the basis of race and race-plus gender in
violation of Title VII of the Civil Rights Act of 1964.  (*Id.* at
3).  She also alleges that the Corps follows facially neutral
employment practices that have a "disproportionate disparate

impact on the selection of African-Americans, particularly
African-American women to GS-14 positions."

## II.  DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate when there are no genuine
issues as to any material facts, and the moving party is entitled
to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c));
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court
must be satisfied that no reasonable trier of fact could find for
the nonmoving party or, in other words, "that the evidence
favoring the nonmoving party is insufficient to enable a
reasonable jury to return a verdict in her favor." *Lavespere v.
Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.
1990) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249
(1986)).  The moving party bears the burden of establishing that
there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party
will bear the burden of proof at trial, the moving party may
satisfy its burden by merely pointing out that the evidence in
the record contains insufficient proof concerning an essential
element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at
325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts

6

to the nonmoving party, who must, by submitting or referring to
evidence, set out specific facts showing that a genuine issue
exists.  *See Celotex*, 477 U.S. at 324.  The nonmovant may not
rest upon the pleadings, but must identify specific facts that
establish a genuine issue exists for trial.  *See id.* at 325;
*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

Because Ashford filed this action pro se, the Court must
judge her pleadings by a more lenient standard than that accorded
to "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404
U.S. 519, 520, *reh'g denied*, 405 U.S. 948 (1972); *accord Guerrero
v. Hauck*, 502 F.2d 579, 580-81 (5th Cir. 1974).  Nevertheless,
plaintiff's pro se status does not exempt her from the usual
evidentiary requirements of summary judgment.  *Grant v. Cuellar*,
59 F.3d 523, 524 (5th Cir. 1995).

**B.   Ashford's Claims**

In her response to the Corps' motion for summary judgment,
Ashford lists fourteen "material issues" in the case; these are
properly claims, not material issues of fact.  Her claims against
the Corps fall into three categories:

1) Disparate treatment of the plaintiff based on her race
and/or gender during the selection process.
2) Disparate treatment of the plaintiff based on her race
and/or gender prior to the selection process by not
placing the plaintiff in positions that might have
helped her earn this or other promotions.
3) Disparate impact on protected race or gender classes

7

from employment practices that are facially neutral.

(Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. and to Supp.
Cross Mot. for Summ. J., 5-9).

    *1.    Law*

      a.    Disparate Treatment

Title VII of the 1964 Civil Rights Act provides that it
shall be an unlawful employment practice for an employer:

> (1) to fail or refuse to hire or to discharge any
> individual, or otherwise to discriminate against any
> individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of
> such individual's race, color, religion, sex, or
> national origin; or
> (2) to limit, segregate, or classify his employees or
> applicants for employment in any way which would
> deprive or tend to deprive any individual of employment
> opportunities or otherwise adversely affect his status
> as an employee, because of such individual's race,
> color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).  The plaintiff in a Title VII action
bears the initial burden of establishing a *prima facie* case of
race discrimination.  *McDonnell-Douglas Corp. v. Green*, 411 U.S.
792, 802 (1973).  This means that the plaintiff must show that
(1) she is a member of the protected class, (2) she was qualified
for the position, (3) she was rejected for the position, and (4)
that the employer hired an applicant with the plaintiff's
qualifications.  *Id*. *See also Haynes v. Pennzoil Co.*, 207 F.3d
296, 300 (5th Cir. 2000).  The burden then shifts to the

defendant to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the challenged employment action.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).  The burden on the defendant is one of production, not persuasion; it "can involve no credibility assessment."  *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)(quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)).

The plaintiff then has the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.  She may succeed by either persuading the Court that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence.  *Id.*

To determine whether plaintiff can survive a motion for summary judgment, the Court will consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148-49.

b.   Disparate Impact

In order to prove disparate impact it is unnecessary to provide evidence of discriminatory intent. *Griggs v. Duke Power Co.*, 401 U.S. 424, 430-32 (1971). Disparate impact claims involve employment practices "that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 (1977). In order to establish a prima facie case under the disparate impact theory, a plaintiff must "isolate and identify a particular employment practice which is the cause of the disparity [in treatment] and provide evidence sufficient to raise an inference of causation." *Garcia v. Woman's Hospital of Texas,* 97 F.3d 810, 813 (5th Cir. 1996). The evidence will focus on the degree of statistical disparity between protected and non-protected workers in regard to employment or promotion. *Munoz v. Orr*, 200 F.3d 291, 300 (5th Cir. 2000). Thus, to succeed on her disparate impact claims, Ashford must produce statistical evidence linking the Corps' employment policies or practices with disparate employment outcomes for blacks or women.

2.   *Ashford's prima facie case of disparate treatment*

No dispute exists that Ashford can provide sufficient

10

evidence to support at least three elements of her *prima facie* case as to the Corps' failure to hire her for the GS level 14 position: she was a member of a protected class, she was subjected to an adverse employment action when she was not selected for a promotion, and the person selected for promotion was not a member of the protected class, in that David Carney is a white man.  Further, Ashford was selected for further consideration based on her application and interviews, and she was considered in the final group of six candidates.  The Court therefore concludes that she has produced evidence that she was qualified for the position for the purposes of establishing a *prima facie* case.  Ashford thus meets all four elements of the *McDonnell-Douglas* test.

> 3.   *The Corps' proffered explanation for Ashford's*
>      *non-selection*

The Corps asserts that Ashford was not hired because Carney was a better-qualified candidate.  Promoting a better qualified applicant is a legitimate, non-discriminatory reason for preferring a successful applicant to one who claims that her rejection was discriminatory.  *Jefferies v. Harris County Cmty. Action Assn.*, 693 F.2d 589, 590-91 (5th Cir. 1982).  The Corps need only offer admissible evidence sufficient for the trier of fact to conclude that the selection panel did not hire Ashford

11

because they believed Carney to be better qualified.  *See Reeves*, 530 U.S. at 142.

The selection panel stated that they did not give Ashford as high a ranking as other candidates because she had "limited experience and technical knowledge of the various fields of ecology, cultural resources, and water resources planning applicable to water resources projects found in the New Orleans District and the type of work performed in the district.  Also, she lacked experience as a supervisor." (Def.'s Mot. for Summ. J., Ex. A-5).

Col. Julich stated that the panel had "full consensus" that Carney was the most qualified applicant. (*Id.* at Ex. B-2 at 66). Julich recalled that Ashford's "key weakness" was her lack of supervisory experience. (*Id.* at 79-80).  When asked to reflect on the statement given by the panel justifying their non-selection of Ashford, he said that the fact that she lacked supervisory experience "probably should have been the first thing that we said." (*Id.* at 82).  He was less able to articulate her experiential or technical shortcomings and stated that Ashford had in fact broadened her background by working on issues outside of the environmental arena, which was "probably not a weakness." (*Id.* at 80-81).

Similarly, both Schroeder and Cobb felt that Carney was a

12

stronger candidate because his resume reflected more prior supervisory experience. (*Id.* at Exs. B-9 at 499, B-3 at 543-44). Without evaluating their persuasive value, the statements of the members of the panel are admissible evidence that the selection panel recommended Carney and not Ashford because they felt Carney was better qualified for the job. Consequently, the Corps has met its burden of articulating a legitimate, nondiscriminatory reason for the challenged employment action.

> 4. *Ashford's allegation of pretext*

Ashford alleges that the Corps' stated non-discriminatory reason is pretextual because she was the best qualified candidate for the position, and thus the reasons offered for preferring Carney are merely cover for their discriminatory animus. (Pl.'s Cross Mot. for Summ. J. at 2). Showing that an unsuccessful applicant is clearly better qualified is enough to prove that an employer's proffered reasons are pretextual. *Price v. Federal Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002)(*citing EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995)). Similar or arguably superior qualifications are not enough to carry a plaintiff's case under this standard; the "losing candidate's qualifications must leap from the record and cry out to all who would listen that he was vastly - or even clearly - more qualified for the subject job." *Id.* at 724 (*quoting Odom v.*

*Frank*, 3 F.3d 839, 845-46 (5th Cir. 1993)(internal quotes omitted)).  In *Price*, the Fifth Circuit found that the plaintiff's better education, work experience, and longer tenure with the company were not sufficient to establish that he was clearly better qualified.  *Id.*

Ashford asserts that she was superior to Carney but does not offer much in her brief to support this appraisal.  (Pl.'s Mem. in Support of Cross Mot. for Summ. J. at 14).  First, Ashford concedes that she and Carney received the same rating from their respective supervisors.  Second, she relies heavily on the fact that the Gallup organization ranked her higher than Carney in its assessment of various leadership traits.  (*Id.* at Ex. DD). However, Gallup rated both Ashford and Carney as "Best Qualified," so any difference between their results was not substantial enough to conclude that Ashford was clearly better qualified, especially since the Gallup evaluation was only one factor of many used by the selection panel in determining the rankings.  (*Id.*).  Finally, she asserts that but for discrimination in the evaluation process, her superior qualifications would have earned her the position, but she does not offer any material facts in support of this argument.  A review of the two candidates' applications demonstrates that both of them have had strong careers in two different areas of the

14

Corps, but Ashford does not stand out as clearly better qualified.

Carney's application states that he holds a B.S. and an M.S. in wildlife management.  He held a series of environmental management jobs with the federal government since 1977 and worked in the New Orleans District since 1979.  From  December of 1991 until he was promoted, he held a supervisory position in which he oversaw a multidisciplinary staff of seven biological scientists. In that capacity, he set policies, procedures and standards related to the preparation and review of environmental compliance documents for navigation, flood damage reduction, and ecological restoration studies and projects. (Def.'s Mot. for Summ. J. at Ex. A-4).  From 1989 to 1998, Carney was recognized with eight Exceptional Performance awards for the previous year's work, along with numerous other commendations.  (*Id*.).  The "Annual Career Appraisal" prepared for Carney in 1996, at which time he had already held the aforementioned supervisory position for over four years, rated him "Excellent" in all qualification elements for supervisory or managerial positions.  (*Id*.).  Regarding his supervisory abilities, his supervisor at the time, John Weber, stated that "Mr. Carney has demonstrated impressive ability to direct and motivate his employees. . . . Mr. Carney has gained considerable respect from his team members and peers because of

15

his management style, fairness, and integrity." (*Id.*).

Ashford's application also demonstrates that she is a highly-regarded and highly-motivated employee.  (Pl.'s Cross Mot. for Summ. J., Ex. C).  She holds a B.S. in Civil Engineering and an M.S. in Environmental Engineering.  She has worked for the Corps since 1984 in a series of progressively advanced positions. At the time of her application, she had worked as a senior planning and environmental program manager at the South Atlantic Divisional Office for nine months.  In that role, she performed planning services and provided support and guidance to various district offices in her division.  She took advantage of a wide array of opportunities to expand her experience through on-the-job training.  Her supervisor twice nominated her for Federal Employee of the Year in the Scientific/Professional category, and she received several other awards during the course of her employment with the Corps.  In her 1996 "Annual Career Appraisal," her supervisor, Francis McGovern, stated that she was "an outstanding environmental engineer," with "a strong background in planning principles/procedures." (*Id.*).  However, as for Ashford's supervisory abilities, McGovern notes only that "Ms. Ashford has demonstrated her ability to work effectively with people, organize and develop programs and ensure their effective execution. . . . *She has excellent supervisory*

16

*potential.*" (*Id.*)(emphasis added).  On her Annual Career
Appraisal dated March 1996, Ashford indicated that her position
for the years 1993 through 1995 was non-supervisory.  (*Id.*).
Though by 1999 she was in a new position, her position title did
not change and her description of her work did not mention any
direct supervisory responsibilities.  By contrast, Carney held a
supervisory position beginning in 1991.  (*Id.* at Ex. D).

     It appears from the two candidates' applications that Carney
had more supervisory experience than Ashford.  He also possessed
a different skill set based on his education and work experience.
Ashford does not explain in any detail why she believes that her
qualifications clearly trump his, and the Court does not find
that they do.  This is especially true, since the position at
issue was supervisory in nature, and greater experience of this
type is a rational basis for preferring one person's
qualifications over another's.

     Ashford also alleges that several irregularities with the
hiring process itself tend to show that the Corps' proffered
explanation for its hiring decision is pretextual: the Corps
allowed David Carney to submit an additional fourteen pages of
material in response to the criteria identified in the vacancy
announcements; panel members imposed rating criteria that were
not in the vacancy announcement, specifically work experience on

projects in the New Orleans District; and the hiring panel found that Ashford had no supervisory experience when in fact she did have such experience.  Preferential treatment in the hiring process may be considered as part of analysis of whether an employer's stated reason for a decision is pretextual.  *See Pratt v. City of Houston*, 247 F.3d 601, 607 (5th Cir. 2001)(finding a reasonable inference of discrimination where the plaintiffs had superior qualifications, plaintiffs were prevented from completing the hiring process, there was preferential treatment of the selectee, and it was alleged that defendant had discriminated in the past).

As for the allegations regarding Carney's submission of additional material, both published announcements specifically asked candidates to submit such material.  (Def.'s Mot. for Summ. J. Exs. A-1, A-2).  Ashford points to a memorandum she received from Louise Crowell, Chief of the Career Management Operations Division of the Corps, which notified Ashford that she had been "identified for consideration" for the position through the CP-18 program, which is an internal program used to alert qualified Corps employees of available jobs.  (Pl.'s Mem. to Supp. Cross Mot. for Summ. J., Ex. A).  This memorandum lists the same criteria as the two announcements, though it does not instruct applicants on how to highlight their proficiency or experience.

(*Id.*).  Ashford states that Army regulations prohibit the attachment of narratives by internal applicants, particularly through the CP-18 program, and the sections of Army Regulation 690-950 she cites do appear to support this assertion.  The instructions for completing and submitting DA Form 2302-R, the form submitted by both Ashford and Carney, state that "narrative information must be limited to the space provided."  (*Id.*, Ex. B p.64).

Ashford apparently followed this admonition because she applied on the basis of the memorandum from Crowell, rather than the published vacancy announcements.  She testified at her administrative hearing that the inclusion of hiring criteria in the CP-18 announcement itself was unusual, and she assumed that any attached materials would be destroyed.  (Def.'s Mot. for Summ. J. at Exs. B-5 at 196, B-6 at 345).

The Corps argues that Ashford could have applied under the guidelines of the published vacancy announcements, which encourage attached narratives.  However, the text of the vacancy announcement targeted at federal employees specifically states that "current Army employees are not eligible to apply under the announcement as they are eligible to be considered under the Career Program 18 Engineers and Scientists referral process." (Def.'s Mot. for Summ. J., Ex. A-1).  At the time of his

19

application, Carney was also employed by the Army, so it is
unclear how or why he attached a narrative form to his
application.  Col. Julich states that Carney was the only
applicant to do so.  (*Id.,* Ex. B-2 at 96).  Carney also
benefitted from his ability to submit additional information,
according to Cobb and Schroeder.  (*Id.*, Exs. B-3 at 556, B-9 at
501).

From the record, it appears that the Corps did not follow
the procedures laid out in the vacancy announcements and its own
regulations.  However, there is no basis in the record to
conclude that this error stemmed from racial or gender bias,
since Ashford has not alleged that the Corps targeted differing
recruitment strategies at applicants of different racial or
gender groups or that they rejected attached narrative statements
from some candidates and accepted them from others.  Ashford
never attempted to submit additional narrative, nor did she
receive any verbal indication from anyone that she would not be
permitted to do so in this instance.  The selection panel did not
decide whether to accept applications with additional
attachments, this decision was made by a personnel office, which
forwarded the applications to the panel.  (Pl.'s Mem. in Supp. of
Cross Mot. for Summ. J., Ex. W at 70).  General Anderson stated
that the documentation is primarily used to determine who makes

20

the shortlist of candidates, which Ms. Ashford made. (*Id.* at
73).  Moreover, in her response to the motion for summary
judgment, Ashford does not point to evidence that she could have
used to supplement her application that would have demonstrated
the superiority of her qualifications vis-à-vis Carney's.  The
record does not show that the Corps was motivated by improper
bias.

Ashford alleges that the members of the review panel gave a
preference to Carney because he had experience with New Orleans-
based projects and she did not, though such geographically
specific experience was not listed among the hiring criteria.
She bases this allegation on the explanation of her non-
selection, which states that "[t]he panel did not rate Ms.
Ashford as highly as other candidates because of her limited
experience and technical knowledge of the various fields of
ecology, cultural resources, and water resources planning
applicable to water resources projects found in the New Orleans
District and the type of work performed in the district."
(Def.'s Mot. for Summ. J., Ex. A-5).  General Anderson testified
that this was an incorrect understanding and that "[t]he policy
is to try to increase the pool of applicants, go beyond the
applicants that are available and interested within the
District."  (Pl.'s Mem. in Supp. of Cross Mot. for Summ. J., Ex.

W at 63).  He explained that the reasons for non-selection were formulated "in the context of the types of work found in the District."  (*Id*.).  However, Julich and Schroeder both stated that Carney was a stronger candidate because of his experience in the New Orleans District.  (Def.'s Mot. for Summ. J., Ex. B-2 at 85-87, Ex. B-4 at 154).  Ashford argues that Julich and Schroeder's consideration of this factor was discriminatory because it was designed to insure that the Corps would ultimately hire Carney and not her.  Nevertheless, a preference for New Orleans-based experience would serve to discriminate against all applicants from outside the New Orleans District, not merely the black or female applicants.  In addition, it is not surprising that familiarity with a local branch's operations would play a role in a hiring decision regardless of the races of the applicants.  Such a fact does not raise an inference of discriminatory conduct.

     Ashford alleges that the review panel applied supervisory experience arbitrarily to their evaluation process in order to avoid selecting her for the position.  She claims that the first hiring criteria - "[a]bility to lead a multi-disciplinary environmental staff" - cannot be exclusively measured through supervisory experience, because to do so would preclude from supervisory positions persons who have never held those positions

22

in the past.  While this may be true, it does not preclude the
review panel from using supervisory experience as a measure of
future capacity to lead a staff.  As stated above, the review
panel's preference for Carney's supervisory experience was
justified by the report prepared by his supervisor, who noted
that he had such experience.  Ashford's supervisor, by contrast,
noted only that she demonstrated "leadership" and "supervisory
potential," a conclusion fairly drawn from Ashford's own
description of her job experience.  Ashford may have had a bright
future as a supervisor, but there is a lack of evidence that her
supervisory experience was equivalent to Carney's.

    Based on the above analysis of Ashford's allegations
regarding the selection process, the Court concludes that she
cannot meet her burden of demonstrating that the Corps' proffered
reasons for her non-selection were pretextual.

        *5.   Ashford's claims regarding temporary positions*
    Ashford alleges that she was discriminated against when she
was not detailed temporarily into the position at issue for 60
days as Carney was.  (Pl.'s Mem. to Supp. Cross Mot. for Summ.
J., 5).  In the attachment to her EEOC complaint, Ashford states
that "[t]he selectee was temporarily promoted to the position in
question for approximately 60 days which unduly favors him a
candidate [sic] for the permanent position.  Other potential

                            23

candidates outside the district [were] not allowed to compete for the temporary position." (*Id.* at Ex. OO).  The Chief of the Equal Employment Office, Selina Lee, sent a "Notice of Acceptance of EEO Complaint" to Ashford on April 19, 2000, in which she accepted Ashford's claim for investigation, characterizing it as follows:

> "You alleged that you were discriminated against because of your race (African American) and sex (female) in the following claim:
>> On or about 24 November 1999, you were not selected for the Chief of Environmental Branch, GS-14, CP Referral #053-18-99.

(*Id.* at Ex. PP).  Ashford replied on May 3, 2000, stating that "the basic statement of the complaint as captured in [the above paragraph] is correct." (*Id.*).  She did not seek to recharacterize her claim to add a claim regarding the failure of the Corps to provide an opportunity for her to work in temporary positions.

The scope of a Title VII complaint is limited to the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination.  *Thomas v. Texas Dept. of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000).  Fairly read, Ashford's EEOC complaint was about the Corps' failure to select her as Chief of the Environmental Branch.  It did not purport to state a claim for racial or gender discrimination in

the temporary promotion process.  Ashford did not correct Ms. Lee's characterization of the scope and nature of the complaint when she had an opportunity to do so.  An investigation into whether the Corps discriminated in filling these temporary positions could not reasonably have been expected to grow from her charges.  Consequently, she may not obtain relief on this basis in federal court.

Even if it could be said that she properly raised these claims in the EEOC proceeding, Ashford would still be unable to seek relief on the basis of disparate treatment or disparate impact with regard to the temporary positions.  There is no evidence in the record that Ashford was aware of the temporary position or applied for it, such that she could have been subject to a discriminatory employment action necessary to state a *prima facie* case of disparate treatment.  *McDonnell-Douglas*, 411 U.S. at 802.

The process of filling temporary positions with persons from within the district is facially discriminatory only on the basis of geography, which is not a protected category under Title VII. Ashford alleges that the racial composition of the New Orleans District is such that limiting temporary hires to that district's staff will necessarily prevent placing African-Americans and African-American women in temporary positions, but there is no

25

evidence in the record sufficient to support a claim for disparate impact on those groups.  The only evidence Ashford provides is a list of persons hired into temporary positions in the New Orleans District from July 1999 until June 2002.  (*Id.* at Ex. JJ).  The list gives no indication as to the race of these persons, consequently it cannot be sufficient to support a claim for disparate impact on the basis of race, which requires proving a statistical link between the facially neutral policy and the impact on a protected class.  *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 994 (1988).

> 6. *Ashford's disparate impact claims for failure to promote*

Disparate impact claims do not require proving intent to discriminate.  *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000). Instead, plaintiff must provide evidence of facially neutral employment practices that create such statistical disparities disadvantaging members of a protected group that they are "functionally equivalent to intentional discrimination." *Id.* (citing *Watson*, 487 U.S. at 987 (1988)).  Plaintiffs must identify specific practices as being responsible for any observed disparities and must conduct a systemic analysis of those employment practices in order to establish their case.  *Id.* (citing *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63,

63 (5th Cir. 1990)).  Plaintiffs must "offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs and promotions because of their membership in a protected group." *Watson*, 487 U.S. at 994.  The evidence in a disparate impact claim will focus on the degree of statistical disparity between protected and non-protected workers in regard to employment or promotion.  *Id.*

Ashford alleges under-representation of women and blacks in the make-up of upper-level professional staff in the New Orleans District, an allegation the Army admits.  (Pl.'s Mem. to Supp. Cross Mot. for Summ. J., Ex. K at 4).  Ashford has established that the Corps has a stated goal of improving the representation of minorities and women in these positions (*Id.* at Exs. U, X, & Y).  She alleges that the Corps' actual selection processes, however, serve to prevent the elevation of blacks and women into these positions.  She makes these allegations entirely on the basis of her own experience with the selection process, without any demonstration that a similar process has been followed for other selection processes.  As discussed above, the Corps only deviated from its own regulations in allowing Carney to submit additional materials with his application; Ashford has offered no additional evidence about that deviation from which an inference

of discrimination could be drawn, let alone statistical conclusions about causation of the type required to prove a disparate impact claim.

To establish a prima facie case of Title VII disparate impact employment discrimination, a plaintiff must show that the employer's facially neutral hiring standards select applicants in a significantly discriminatory pattern. *Dothard v. Rawlinson*, 433 U.S. 321, 329 (1977); *Banks v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 578 (5th Cir. 2003). A plaintiff must demonstrate that the disparity complained of is the result of the challenged policy. *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1284 (5th Cir. 1994). If the allegation is that the challenged practice was ignoring the policy to allow for attachments to applications in some cases but not others, Ashford has presented no evidence that such a practice was ever applied to anyone but her. As a result, her disparate impact claim cannot survive summary judgment.

   7.   *Ashford's Motion to Exclude the Affidavit of Cheryl Weber*

Plaintiff moves to exclude the affidavit and testimony of Cheryl Weber, because Weber states in her affidavit that the Gallup evaluation did not involve supervisory skills. (Def.'s Mot. for Summ. J., Ex. A). Weber is a human resources officer

with the Corps; at the time of the hiring action in this case, she was a Personnel Management Specialist, and she was personally involved in the recruiting and hiring effort to fill the GS level 14 vacancy ultimately awarded to Carney.  She states in her affidavit that the Gallup assessment did not involve supervisory skills, which is consistent with the testimony she gave during the administrative hearings, in which she stated that the focus of the Gallup assessment is on leadership skills.  (Pl.'s Mem. to Supp. Cross Mot. for Summ. J., Ex. I at 109).  While she and Ashford may disagree as to the meaning of those terms, she is competent to offer her interpretation and impressions as to the purpose of the Gallup assessment; the Court finds no reason to exclude her testimony from consideration.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment and DENIES plaintiff's cross-motion.

Plaintiff's claims are DISMISSED.


New Orleans, Louisiana, this ___23rd___ day of February, 2006.


_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE